**COMMONWEALTH of Pennsylvania**

v.

**George J. BIDELSPACHER, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 6, 2000.

Decided Jan. 8, 2001.

John P. Campana, Williamsport, for appellant.

Kenneth A Osokow, Williamsport, for appellee.

Before FRIEDMAN, J., KELLEY, J. and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

George J. Bidelspacher (Appellant) appeals from the February 9, 2000 order of the Court of Common Pleas of Lycoming County (trial court), which found Appellant guilty beyond a reasonable doubt of summary violations of sections 2122, 2126(a)(3) and 2305(a) of the Game and Wildlife Code[1] (Game Law). We affirm in part and reverse in part.

At a hearing before the trial court, Terry D. Wills, an employee of the Pennsylvania Game Commission (Game Commission), presented the following testimony. On August 12, 1999, at 6:30 p.m., Wills climbed a pine tree along the edge of a

---

1. Section 2122 of the Game and Wildlife Code (Game Law), 34 Pa.C.S. § 2122, provides as follows:

Any person who kills any game or wildlife, other than raccoons, under the provisions of this subchapter shall, within 24 hours, report, orally or in writing, the killing to an officer of the commission. The report shall set forth the date, time and place of the killing, the number of species killed and the sex of the species.

Section 2126(a)(3) of the Game Law, 34 Pa. C.S. § 2126(a)(3), states that it is unlawful for any person while acting under the provisions of this subchapter to "[u]se any firearm except a center fire propelling a single all-lead, lead alloy or expanding bullet or ball to kill or attempt to kill any big game animal." Section 2305(a) of the Game Law, 34 Pa.C.S. § 2305(a), states that it is "unlawful for any person who kills or wounds any game or wildlife while engaged in any activities permitted by this title to refuse or neglect to make a reasonable effort to retrieve, retain or lawfully dispose of such game or wildlife."

cornfield that was being farmed by Appellant. (N.T. at 10–11.) At 7:30 or 7:45 p.m., Wills heard a vehicle approaching and a door closing. Wills then observed Appellant walking along the edge of the cornfield carrying a rifle with a scope. (N.T. at 14.) Appellant looked across the cornfield, stopped, raised the rifle, placed the rifle butt on his shoulder, pointed the rifle and fired a shot. Wills then saw several deer running towards his location. Appellant continued walking until Wills lost sight of him. (N.T. at 20–21.)

At 8:30 p.m., Wills saw Appellant again. Appellant walked into the cornfield, raised his rifle, took aim at a mother deer and two fawns and fired. The mother and one of the fawns ran. Appellant fired a second shot, and the remaining fawn dropped and began kicking and thrashing wildly and continued moving for some time. (N.T. at 23.) Appellant took a few steps, scanned the field for a short time and walked back to his vehicle. (N.T. at 24.)

Wills climbed down from the pine tree and met his partner, James Neylon, who had been in another tree. (N.T. at 24.) They found the injured fawn and saw that it was unable to get up; it appeared to have a small caliber wound in the hip area. Wills retrieved a flashlight and a camera from his vehicle and, at 9:00 p.m., took a photograph of the fawn. (N.T. at 25–26.) Wills then killed the fawn by hitting it once on the back of the head with the flashlight. (N.T. at 56–57, 97–98.) Afterward, the two men left. (N.T. at 38.)

When Wills and Neylon returned the following evening, August 13, 1999, it was evident that something had fed on the carcass. (N.T. at 38–39.) They took additional photographs and used a metal detector to find two .22 caliber rim fire shell casings near the spot where Appellant fired his rifle at the deer. (N.T. at 39.) Wills and Neylon returned again on the morning of August 14, 1999 to take photographs and to measure distances. (N.T. at 40–41.) On August 21, 1999, the two men went to see Appellant at his home to inform him of his violations of the Game Law. (N.T. at 42.)

Appellant was convicted before a district justice for: (1) one count of failing to report the killing of the fawn within twenty-four hours; (2) two counts of using a .22 caliber rim fire weapon instead of a center fire weapon to shoot the fawn; and (3) one count of neglecting to retrieve the wounded fawn. Appellant filed an appeal with the trial court, which, after a hearing, also found Appellant guilty of the charges.

## I. Qualification of Expert

On appeal,[2] Appellant argues that the trial court erred by permitting Wills to testify as an expert at determining the caliber of the weapon from the sound alone.[3]

■ It appears that Appellant has misconstrued the trial court's ruling on this matter. The trial court did *not* qualify Wills as an expert at determining the caliber of a weapon based on its sound. Rather, the trial court qualified Wills as an expert at distinguishing between the sound of a rim fire cartridge and a center fire cartridge.[4] Based on Wills' testimony

**2.** We note that Appellant does not challenge his conviction for a violation of section 2305(a) of the Game Law.

**3.** The standard for qualifying an expert in Pennsylvania is a liberal one. "If a witness 'has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the [fact finder].' " Leonard Packel and Anne Bowen Poulin, *Pennsylvania Evidence* § 702.3 (1987). "[T]he qualification of an expert witness is a matter within the sound discretion of the trial court and will be reversed only for clear abuse of discretion." *Id.* "A witness can qualify as an expert by experience—formal education or training is not required." *Id.*

**4.** The trial court explained its decision to qualify Wills as an expert as follows:

[T]he witness testified he had been employed with the Pennsylvania Game Commission full-time since 1991 and was very familiar with fire arms. He further testified

about his experience in this area,[5] we find no clear abuse of discretion in the trial court's qualifying Wills as an expert in that regard.

## II. Section 2122

Appellant next argues that the trial court erred when it found Appellant guilty of violating section 2122 of the Game Law. Appellant contends that he did not "kill" the fawn; therefore, he had no duty to report a "killing" under section 2122. We agree.

Section 2122 of the Game Law states that a person who "kills" game or wildlife, other than raccoons, under the provisions of the subchapter shall report the "killing" within 24 hours to a commission officer. 34 Pa.C.S. § 2122. The subchapter allows a person to kill game or wildlife where the presence of the game or wildlife on cultivated lands is just cause for reasonable

apprehension of imminent destruction of the cultivated lands. Section 2121(a)(3) of the Game Law, 34 Pa.C.S. § 2121(a)(3). Any person who "wounds" game or wildlife under section 2121 of the Game Law must "immediately make a reasonable effort to find and kill the game or wildlife." 34 Pa.C.S. § 2121.

This court is required to strictly construe the penal provisions of a statute.[6] Section 2122 requires that an individual report a "killing" of game or wildlife within twenty-four hours. The provision does *not* require anyone to report a "wounding" or a "mortal wounding" of game or wildlife within twenty-four hours. Therefore, we conclude that the trial court erred in finding Appellant guilty of violating section 2122 of the Game Law.[7]

Accordingly, we affirm in part and reverse in part.[8]

---

that from the age of 10 to 18 he was heavily involved in competitions with .22's, indoor and outdoor. N.T. at 30. He further indicated that he was a military veteran and *could recognize the difference between the sound of a rim fire cartridge and a center fire cartridge. .... He didn't say he could tell the caliber. ....* What he said is, I can't distinguish exact calibers, but I can distinguish the difference between a rim fire and a center fire weapon.

(Trial court op. at 1–2.) (Emphasis added.)

5. Wills testified about the distinction in the sound as follows:

Q Is there any distinction in your experience in firing in competitions, center fire and rim fire, in the sound that they make?
A Yes.
Q Can you describe what that difference is?
A A .22 rim fire cartridge is not nearly as loud as center fire cartridges, and there is a very characteristic sound to a .22 rifle fire that is much different than a high powered rifle range center fire weapon.
Q How does, say, for example, a rim fire cartridge sound?
A Not as loud. Frequency of the noise is not the same, and when you hear one at a distance it's just it has a more of a it's hard to describe verbally, but they're just very characteristic in their sounds. It's a shorter, lower decibeling [sic] in my opinion than—it's just different.
Q How does a larger caliber center fire cartridge sound when it's discharged?

A Much louder, a little bit of a longer echo; in most cases, sharper report, more of a booming sound.
(N.T. at 30–31.)

6. Section 1928(b)(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(1); *see Commonwealth v. Seigworth,* 154 Pa. Cmwlth. 458, 624 A.2d 223 (1993) (refusing to construe the phrase "care for a carcass" in section 2126(a)(5) of the Game Law to encompass the removal of entrails, which is specifically required by section 2125 of the Game Law).

7. As indicated above, the Game Law contains a separate provision governing the "wounding" of game or wildlife by a person protecting cultivated lands. Section 2121 provides that, where a person has "wounded" game or wildlife, as Appellant did here, the person must immediately make a reasonable effort to find and "kill" the animal. 34 Pa.C.S. § 2121. If Appellant did not make a reasonable effort to find and kill the wounded fawn, then Appellant should have been charged with *failing to kill* a deer under section 2121. That is the proper charge when a person "wounds" game or wildlife and does nothing further. However, Appellant should *not* have been charged with "killing" an animal and failing to report it under section 2122.

8. Because of our disposition of the first two issues raised by Appellant, we need not address the remaining issue.

## ORDER

AND NOW, this 8th day of January, 2001, the order of the Court of Common Pleas of Lycoming County, dated February 9, 2000, is affirmed in part and reversed in part.